GLADSTONE CHERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30577.   Promulgated July 3, 1931.

*Gladstone Cherry* pro se.

*J. M. Leinenkugel, Esq.*, for the respondent.

### OPINION.

McMahon: The contention of respondent is that an item of $6,060.24 credited to the account of petitioner on the books of account of Arthur Young & Company, his employer, should have been included as income received by petitioner in 1922, i. e., the total amount of income received by him from the company in 1922 should have been $19,397.18, as appears on the information return, Form No. 1099, filed by Arthur Young & Company, instead of $13,336.97 as reported by petitioner on his income-tax return for that year. In support of his determination of deficiency, it is further contended by respondent that the company terminated the contract existing between it and petitioner and under the terms of the contract the company was required to pay to petitioner, in the event it terminated the contract, one-half of the profit paid to petitioner the preceding year; that this item of $6,060.24 represents such profits; and that the company, having terminated the contract, in compliance therewith, credited the $6,060.24 to petitioner's account, thereby reducing the amount of the overdraft.

Petitioner contends that the contract was mutually terminated; that the item of profit did not at any time enter into his calculation of the amount he owed the company; that the item of profit was not considered by him as due him under the contract; that neither he nor his attorney considered the item in the negotiations for settlement or in the compromise or settlement of the suit against petitioner commenced by the company; that he did not question the amount of the overdraft of approximately $20,000; that the only difference between petitioner and the company was the allowance, as a credit against the overdraft, of the business expense of the company paid by petitioner in the net amount of $12,435; that settlement was made allowing practically all the expenses claimed; and that he approved the settlement because the agreed amount of the settlement was approximately the amount he admitted that he owed the company.

The testimony of petitioner that he did not actually receive $6,060.24 from the company is undisputed.

In our opinion, in view of the undisputed testimony of petitioner and the letter of September 21, 1922, the contract was mutually terminated then. The opening phrase in the letter: " Confirming

our decision arrived at in our conference with you today" is clear and unambiguous and can only refer to a mutual decision arrived at in a conference between the parties.

Although respondent contends that the company credited the item of profit to petitioner's account under the terms of the contract, there is no evidence that petitioner was paid or credited with an amount equal to six months salary, which was the first stated amount in the contract the company was required to pay to petitioner in the event it terminated the contract. Petitioner apparently was paid a salary of $5,000 a year. It appears that the company paid to the petitioner salary for the year 1922 only.

Respondent contends that this item of $6,060.24 represents profit. However, it is to be noted that, in itemizing the total amount of income paid to petitioner by the company, an amount of $8,336.97 is specified as "Share of profits" and the amount of $6,060.24 is specified as "Amount in settlement of good will, etc., under contract." The part of the contract in evidence does not refer to or provide for an allowance to petitioner for good will.

The agreement of settlement entered into between petitioner and the company discloses that it commenced suit against petitioner on a claim of $13,213.64, and not on the claimed overdraft of $19,273.88. The difference between the amount of the overdraft and the amount claimed in the suit is $6,060.24.

No evidence was presented by either party as to the nature of the credits and debits which created the overdraft of approximately $20,000. There is no evidence from which we can determine the reason for the change in the amount of overdraft first claimed by the company and the amount claimed in suit. In view of the fact that sufficient evidence has not been presented from which we can determine that the respondent was in error in his determination of the deficiency, we must approve his determination of the deficiency for the year 1922.

It is alleged in the petition and admitted in the answer that the taxes in controversy are income taxes for the years 1922 and 1923. However, the petitioner has alleged no error in the respondent's determination for the year 1923 and no evidence has been adduced to show that the respondent did err in his computation as to the year 1923. Such determination of the respondent as to the year 1923 is therefore approved.

*Judgment will be entered for the respondent.*